ORIGINAL
FILED

JUN 2 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

Jason Flanders (Bar No. 238007)
Andrea Kopecky (Bar No. 276366)
SAN FRANCISCO BAYKEEPER
785 Market Street, Suite 850
San Francisco, California 94103
Telephone: (415) 856-0444
Facsimile: (415) 856-0443
Email: jason@baykeeper.org
Email: andrea@baykeeper.org

Sejal Choksi (Bar No. 222093)
3378 South Lucille Lane, Suite B
Lafayette, California 94549
Telephone: (925) 330-7757
Facsimile: (415) 856-0443
Email: sejal@baykeeper.org

Attorneys for Plaintiff:
BAYKEEPER

E-filing

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| BAYKEEPER, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAKESIDE NON-FERROUS METALS, INC.,<br>Defendant. | Civil No. CV 12 3294 DMR<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et. seq.) |

1   Baykeeper, by and through its counsel, hereby alleges:

2   **I.   JURISDICTION AND VENUE**

3   1.      This is a civil suit brought under the citizen suit enforcement provisions of the Federal

4   Water Pollution Control Act, 33 U.S.C. section 1251 *et seq.* (the "Clean Water Act" or the "CWA").

5   This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to

6   section 505(a)(1) of the CWA, 33 U.S.C. section 1365(a)(1), 28 U.S.C. section 1331 (an action for

7   declaratory and injunctive relief arising under the Constitution and laws of the United States), and 28

8   U.S.C. section 2201.

9   2.      On April 4, 2012, Baykeeper provided notice of violations of the CWA by Defendant

10  Lakeside Non-Ferrous Metals, Inc. ("Lakeside") and of Baykeeper's intention to file suit against

11  Lakeside ("Notice Letter") to the Administrator of the United States Environmental Protection Agency

12  ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Water

13  Resources Control Board ("State Board"); the Executive Officer of the Regional Water Quality

14  Control Board, San Francisco Bay Region ("Regional Board"); the U.S. Attorney General (collectively

15  "state and federal agencies"), and the Defendant as required by the CWA, 33 U.S.C. § 1365(b)(1)(A).

16  A copy of this Notice Letter is attached to this complaint as Exhibit 1.

17  3.      More than sixty days have passed since the Notice Letter was mailed to Lakeside and

18  the state and federal agencies.  Neither the EPA nor the State of California has commenced or is

19  diligently prosecuting a court action to redress the violations alleged in this complaint.  No claim in

20  this action is barred by any prior administrative action pursuant to section 309(g) of the CWA, 33

21  U.S.C. § 1319(g).

22  4.      Venue is proper in the Northern District of California pursuant to section 505(c)(1) of

23  the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial

24  district.

25  **II.   INTRADISTRICT ASSIGNMENT**

26  5.      Intradistrict assignment of this matter to the Oakland Division of the Court is

27  appropriate pursuant to Civil Local Rule 3-2(c).  The events or omissions which give rise to

28  Baykeeper's claims occurred in the City of Oakland located in Alameda County California.

COMPLAINT                                                                                          Page 1

III.   **INTRODUCTION**

6.      This complaint seeks relief for alleged unlawful discharges of pollutants from Lakeside's facilities, located at 412 Madison Street Oakland, California (the "Madison Facility"), and at 455 9th Avenue Oakland, California (the "9th Avenue Facility") (collectively, the "Facilities") in violation of the Clean Water Act and the State of California's General Permit No. CAS000001, Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"), and into waters of the United States.

7.      Violations of the Clean Water Act and the Industrial Stormwater Permit by numerous industrial sites are recognized as a leading cause of significant, cumulative impacts to the water quality of San Francisco Bay.  With every rainfall event, hundreds of millions of gallons of polluted rainwater flow off local industrial facilities, such as Lakeside's Facilities, and pour into storm drains, into local tributaries, and into the Bay.  The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the marine environment each year.

8.      Stormwater runoff from industrial sites such as Lakeside's Facilities causes harm to humans and aquatic life.  In particular, stormwater contains suspended sediment and heavy metals such as lead, mercury, copper, iron, zinc, tin, nickel, and aluminum.  Exposure and ingestion of heavy metals can cause health problems in people and aquatic animals, including neurological and reproductive effects.  Fish are widely used to evaluate the health of aquatic systems because pollutants accumulate in fish, which are an important part of aquatic food chains.  Heavy metals have been shown to alter physiological activity in tissues and blood of fish.

9.      High concentrations of suspended solids ("TSS") degrade optical water quality by reducing water clarity and decreasing light available to support photosynthesis.  Suspended solids have been shown to alter predator-prey relationships (for example, turbid water might make it difficult for fish to see their prey).  Deposited solids alter habitat for fish, aquatic plants, and benthic organisms.  TSS can also be harmful to aquatic life because numerous pollutants, including metals and PAHs, are adsorbed onto TSS.  Thus, higher concentrations of TSS mean higher concentrations of toxins associated with those sediments.

COMPLAINT                                                                                  Page 2

10.     Stormwater from recycling facilities contains heavy metal pollutants such as aluminum, copper, iron, lead, and zinc.  Inorganic sediments, including settleable matter and suspended solids, have been shown to negatively impact species richness, diversity, and total biomass of filter feeding aquatic organisms on bottom surfaces.  Metals such as copper and iron have been shown to accumulate in aquatic organisms and cause negative effects on physiology and reproduction.

## IV.   PARTIES

11.     Plaintiff Baykeeper is a non-profit public benefit corporation organized under the laws of the State of California with its main office in San Francisco, California.  Baykeeper members live and/or recreate in and around the San Francisco Bay area.  Baykeeper is dedicated to protecting the water quality of San Francisco Bay for the benefit of its ecosystems and communities.  To further these goals, Baykeeper actively seeks federal and state agency implementation of the Clean Water Act, and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

12.     Members of Baykeeper, including citizens, taxpayers, property owners, and residents, live, work, travel, and recreate in or near San Francisco Bay and its tributaries into which Lakeside discharges pollutants.  These Baykeeper members use and enjoy San Francisco Bay, its tributaries, and adjacent wetlands, for recreational, educational, scientific, conservation, aesthetic, and spiritual purposes.  Lakeside's discharge of stormwater containing pollutants impairs each of those uses.  Thus, the interests of Baykeeper's members have been, are being, and will continue to be adversely affected by Lakeside's failure to comply with the Clean Water Act and the Industrial Stormwater Permit.

13.     Defendant Lakeside is a corporation organized under the laws of the State of California with its principal place of business located in Oakland, California.  Lakeside operates two facilities where sorting, storing, transporting, and other industrial activities occur during the collection of recyclable materials.

## V.   REGULATORY BACKGROUND

### Clean Water Act

14.     CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is in compliance with various enumerated CWA sections.  Among other things, CWA section 301(a) prohibits discharges not authorized by, or in

COMPLAINT                                                                                                 Page 3

violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to CWA section 402, 33 U.S.C. § 1342.

15.   CWA section 402(b), 33 U.S.C. § 1342(b), allows each state to administer its own EPA-approved permit program for discharges.  In California, the State Board and its nine Regional Boards have approval from EPA to administer an NPDES permit program for the State.  The State Board and Regional Boards issue individual and general NPDES permits regulating water pollutant discharges from various categories of dischargers.

16.   CWA section 402(p), 33 U.S.C. § 1342(p), requires that NPDES permits be issued for stormwater discharges associated with industrial activities.

17.   CWA section 301(b) requires that, by March 31, 1989, all point source dischargers, including those discharging polluted stormwater, must achieve technology based effluent limitations based upon Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.  *See* 33 U.S.C. § 1311(b); 40 C.F.R. §§ 125.3(a)(2)(ii), 125.3(a)(2)(iii), 125.3(a)(2)(iii).

18.   CWA section 505(a)(1) provides for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants.  33 U.S.C. § 1365(a)(1); *see* 33 U.S.C. § 1362(5).

19.   CWA section 505(a) authorizes a citizen suit action for injunctive relief.  33 U.S.C. § 1365(a).

20.   CWA violators are subject to an assessment of civil penalties of up to $32,500 for all violations occurring on or after March 15, 2004 through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009.  CWA § 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. §§ 19.1-19.4.

**State Regulations**

21.   Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality Standards, including water quality objectives and beneficial uses for navigable waters of the United States.  The CWA prohibits discharges from causing or contributing to a violation of such state Water

1  Quality Standards. *See* 33 U.S.C. § 1311(b)(1)(c), 40 C.F.R. §§ 122.4(a) and (d), 40 C.F.R. §

2  122.44(d)(1).

3       22.    The State of California regulates water quality through the State Board and nine

4  Regional Boards, and each Regional Board maintains a separate Water Quality Control Plan which

5  contains Water Quality Standards for water bodies within its geographic area.

6       23.    The San Francisco Bay Regional Water Quality Control Board has adopted the "San

7  Francisco Bay Basin (Region 2) Water Quality Control Plan (Basin Plan)" (hereafter "Basin Plan"), as

8  amended by Resolution No. R2-2010-0100, setting forth the beneficial uses and Water Quality

9  Standards for San Francisco Bay and its tributaries.

10       24.    The Basin Plan sets forth, among other things, narrative Water Quality Standards for

11  floating material, oil and grease, sediment, settleable matter, and suspended materials, and sets forth

12  numeric Water Quality Standards for pH, arsenic, cadmium, chromium VI, copper, cyanide, lead,

13  mercury, nickel, selenium, silver, tributyltin, zinc, and PAHs. *See* Basin Plan §§ 3.3.6, 3.3.7, 3.3.9,

14  3.3.12-3.3.14, 3.3.21, and Table 3-3. The Basin Plan also includes site specific objectives ("SSO"),

15  which are Water Quality Standards for specific sites, for certain pollutants of concern, including

16  copper and nickel. Basin Plan Table 3-3A.

17       25.    In addition, EPA has promulgated Water Quality Standards for toxic priority pollutants

18  in all California water bodies (the "California Toxics Rule" or "CTR"), which apply to San Francisco

19  Bay and its tributaries, unless expressly superseded by the Basin Plan. 65 Fed. Reg. 31682 (May 18,

20  2000), 40 C.F.R. § 131.38.

21  **The General Industrial Stormwater Permit**

22       26.    In California, the State Board has elected to issue a single, statewide general permit

23  applicable to all stormwater discharges associated with industrial activity. *See* NPDES General Permit

24  No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as

25  amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit"). The Industrial Stormwater

26  Permit is an NPDES permit pursuant to CWA section 402(p), 33 U.S.C. § 1342(p). To discharge

27  stormwater lawfully in California, industrial dischargers must secure coverage under the Industrial

28

---

COMPLAINT                                                            

1    Stormwater Permit and comply with its terms or obtain and comply with an individual NPDES permit.
2    Industrial Stormwater Permit, pg II.

3          27.    Violations of the Industrial Stormwater Permit are also violations of the CWA.
4    Industrial Stormwater Permit, Order Part C(1).

5          28.    The Industrial Stormwater Permit contains certain absolute prohibitions. Discharge
6    Prohibition A(1) of the Industrial Stormwater Permit prohibits the direct or indirect discharge of
7    materials other than stormwater ("non-storm water discharges"), which are not otherwise authorized
8    by an NPDES permit, to the waters of the United States.  Industrial Stormwater Permit, Order Part
9    A(1).  Discharge Prohibition A(2) of the Industrial Stormwater Permit prohibits stormwater discharges
10   that cause or threaten to cause pollution, contamination, or nuisance.  *Id.* at Order Part A(2).
11   Receiving Water Limitation C(1) of the Industrial Stormwater Permit prohibits discharges that
12   adversely impact human health or the environment.  *Id.* at Order Part C(1).  Receiving Water
13   Limitation C(2) of the Industrial Stormwater Permit prohibits discharges that cause or contribute to an
14   exceedance of any applicable water quality standard contained in a Statewide Water Quality Control
15   Plan or the applicable Regional Board's Basin Plan.  *Id.* at Order Part C(2).

16         29.    Under the CWA and the Industrial Stormwater Permit, dischargers must employ
17   measures to reduce or eliminate stormwater pollution that constitute BAT and BCT.  33 U.S.C. §
18   1311(b); Industrial Stormwater Permit, Order Part B(3).  EPA has developed Benchmarks that are
19   objective standards to evaluate whether a permittee's Best Management Practices ("BMPs") achieve
20   compliance with the BAT/BCT standards as required by Effluent Limitation B(3).  *Id.*; NPDES Storm
21   Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Federal
22   Register 64746, 64766 (2000); Multi-Sector Permit, 73 Federal Register 56572, 56573 (2008)
23   (incorporating Fact Sheet, p. 103, available at http://www.epa.gov/npdes/stormwater/msgp).

24         30.    Dischargers must develop and implement a Storm Water Pollution Prevention Plan
25   ("SWPPP") at the time industrial activities begin.  Industrial Stormwater Permit, Section A(1)(a) and
26   Order Part E(2).  The SWPPP must identify and evaluate sources of pollutants associated with
27   industrial activities that may affect the quality of storm and authorized non-stormwater discharges
28   from the facility.  *Id.* at Section A(2).  The SWPPP must identify and implement site-specific BMPs to

COMPLAINT                                                                                     Page 6

reduce or prevent pollutants associated with industrial activities in stormwater and authorized non-stormwater discharges. *Id.* The SWPPP must include BMPs that achieve pollutant discharge reductions attainable via BAT and BCT. *Id.* at Order Part B(3).

31.    The SWPPP must include:  a narrative description and summary of all industrial activity, potential sources of pollutants, and potential pollutants; a site map indicating the stormwater conveyance system, associated points of discharge, direction of flow, areas of actual and potential pollutant contact, including the extent of pollution generating activities, nearby water bodies, and pollutant control measures; a description of stormwater management practices; a description of the BMPs to be implemented to reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges; the identification and elimination of non-stormwater discharges; the location where significant materials are being shipped, stored, received, and handled, as well as the typical quantities of such materials and the frequency with which they are handled; a description of dust and particulate generating activities; and a description of individuals and their current responsibilities for developing and implementing the SWPPP. Industrial Stormwater Permit, Sections A(1-10).

32.    The Industrial Stormwater Permit also requires facility operators to properly operate and maintain any facilities and systems of treatment and control installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and requirements of the SWPPP at all times. Industrial Stormwater Permit, Section C: Standard Provisions. The SWPPP and site maps must be assessed annually and revised as necessary to insure accuracy and effectiveness. *Id.* at Section A(1) and Sections B(3-4).

33.    Facility operators are required to develop and implement a monitoring and reporting program ("MRP") when industrial activities begin at a facility. Industrial Stormwater Permit at Section B: Monitoring Program and Reporting Requirements (1) and Order Part E(3). The MRP must ensure that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at Section B(2). The MRP must ensure that practices at the facility to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges are evaluated and revised to meet changing conditions at the facility, including revision of the SWPPP. *Id.*

---

COMPLAINT                                                                    Page 7

34.     Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct ongoing visual observations of stormwater and non-stormwater discharges and record responsive measures taken to eliminate unauthorized non-stormwater and to reduce or prevent pollutants in stormwater and authorized non-stormwater discharges.  Industrial Stormwater Permit at Sections B(3-4).  Facility operators must collect samples of stormwater discharges from all locations where stormwater may be discharged from the facility.  *Id.* at Sections B(5) and (7).  Stormwater samples must be analyzed for pH, total suspended solids, total organic carbon (or oil and grease as a substitute), specific conductance, and toxic chemicals and other pollutants which are likely to be present in stormwater in significant quantities.  *Id.* at Section B(5).

## VI.     STATEMENT OF FACTS

35.     Lakeside operates two facilities (the "Facilities") located in Oakland adjacent to the Oakland Estuary and San Francisco Bay.  The Lakeside Madison facility at 412 Madison Street is located approximately 0.5 miles from the Oakland Estuary, a body of water that is connected to San Francisco Bay to the west and San Leandro Bay to the east.  The Lakeside 9th Avenue Facility is at 455 9th Avenue and is located on property that borders the Oakland Estuary.

36.     The Facilities are regulated by the Industrial Stormwater Permit.

37.     The Facilities provide recycling services.  Operations generally include sorting and processing recyclable wastes and non-ferrous metals, transporting materials on and off site, storage of waste and processed materials, and truck and equipment operation.

38.     Operations at the Facilities occur outdoors and are causing pollutants to be exposed to rainfall.

39.     Vehicles and equipment at the Facilities expose many other sources of pollution to the elements, including gasoline, diesel fuel, anti-freeze, battery fluids, and hydraulic fluids.

40.     The types of pollutants that the Facilities release into the immediate environment include, among others: dust, debris, and total suspended solids ("TSS"); toxic metals such as aluminum, copper, iron, lead, nickel and zinc; petroleum products including oil, gasoline, grease, and diesel fuel; and chemical admixtures, battery fluids, acids, solvents, and pH-affecting substances.

41.     The waste materials stored and the pollutants generated at the Facilities are exposed to

COMPLAINT                                                                                                          Page 8

1    stormwater flows.

2        42.    Activities at the Facilities generate significant dust and particulate matter, which

3    contain pollutants and settle on surfaces within the Facilities.  During rain events, this pollution

4    washes off of those surfaces and into nearby waters including the Bay.

5        43.    Stormwater discharges off the Facilities at several locations, which lead to the Oakland

6    Estuary, which is connected to the San Francisco and San Leandro Bays.

7        **Lakeside's Activities Contributing to CWA Violations**

8        44.    Lakeside has not developed and/or implemented adequate SWPPPs at the Facilities.

9        45.    Lakeiside has not developed and/or implemented BMPs that adequately minimize the

10    exposure of pollutants at the Facilities to stormwater.

11        46.    Lakeside has not developed and/or implemented BMPs at the Facilities that adequately

12    control and minimize polluted runoff from the Facilities.

13        47.    Lakeside has not developed and/or implemented BMPs at the Facilities that adequately

14    treat and remove pollutants in stormwater prior to discharge.

15        48.    Lakeside has not developed and/or implemented adequate measures to reduce or

16    eliminate stormwater pollution that constitute the Best Available Technology Economically

17    Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT").

18        49.    Lakeside has not developed and/or implemented BMPs at the Facilities to meet EPA

19    Benchmarks or applicable Water Quality Standards.

20        50.    Lakeside has not adequately evaluated and revised its SWPPPs for the Facilities to

21    address these failures.  Lakeside has also failed to properly operate and maintain the structures and

22    systems that have been put in place at the Facilities to achieve compliance with the Industrial

23    Stormwater Permit and its SWPPP requirements.

24        51.    Lakeside has not developed and/or implemented adequate MRPs at the Facilities.

25        52.    Lakeside's monitoring and reporting activities have not resulted in practices that

26    adequately reduce or prevent pollutants from discharging from the stormwater flows from the

27    Facilities.

28        53.    Lakeside's monitoring activities have not effectively identified compliance problems at

1     the Facilities or resulted in effective revision of the SWPPPs.

2         54.     Due to Lakeside's lack of effective pollution prevention measures, its failure to

3     implement effective best management practices, and its failure to implement an effective monitoring

4     and reporting program, stormwater from the Facilities becomes polluted with many constituents.

5     Dust, paint, toxic metals such as copper, iron, zinc, and aluminum; petroleum products including fuels

6     and oil, acids and solvents; and TSS and pH-affecting substances become entrained in stormwater

7     when such water flows over and across the storage and outdoor processing areas of the Facilities. This

8     polluted stormwater is discharged into waters of the United States including the Oakland Estuary,

9     which is connected to the San Francisco and San Leandro Bays.

10         55.     Lakeside's own stormwater sampling indicates that Lakeside's discharges of

11     stormwater are consistently contaminated with higher levels of pollutants than is permissible under the

12     Industrial Stormwater Permit.

13         56.     Lakeside's own stormwater sampling indicates that Lakeside's discharges of

14     stormwater are consistently contaminated with higher levels of pollutants than is permissible under the

15     Basin Plan.

16         57.     Lakeside's own stormwater sampling indicates that Lakeside's discharges of

17     stormwater are consistently contaminated with higher levels of pollutants than is permissible under the

18     CTR.

19         58.     Lakeside's own stormwater sampling indicates that Lakeside's discharges of

20     stormwater are consistently contaminated with higher levels of pollutants than is consistent with best

21     management practices that constitute BAT and/or BCT.

22         59.     Lakeside's repeated stormwater exceedances of EPA Benchmarks over the past five

23     years for pollutants including aluminum, copper, iron, lead, nickel, zinc, total suspended solids,

24     chemical oxygen demand, and electrical conductivity indicate that Lakeside has failed and continues

25     to fail to meet BAT/BCT.

26     **VII.   CLAIMS**

27                            **FIRST CLAIM FOR RELIEF**

28         **Discharges in Violation of Permit Prohibitions of the Industrial Stormwater Permit**

COMPLAINT                                                                          Page 10

1    **(Violations of 33 U.S.C. § 1311)**

2    60.    Plaintiff incorporates the allegations contained in all preceding paragraphs as though

3    fully set forth herein.

4    61.    Since at least December 18, 2007, Lakeside has been discharging polluted stormwater

5    from the Facilities in violation of the prohibitions of the Industrial Stormwater Permit during every

6    significant rain event (defined by the United States Environmental Protection Agency as a rainfall

7    event generating 0.1 inches or more of rain).  *See* Exhibit 1, Notice Letter, Attachment 4.

8    62.    The polluted stormwater discharged from the Facilities during every significant rain

9    event contains pollutants harmful to fish, plant, bird life, and human health that have adversely

10   affected human health and the environment in violation of Receiving Water Limitation C(1) of the

11   Industrial Stormwater Permit.

12   63.    The discharges of polluted stormwater from the Facilities have in the past caused, and

13   will continue to cause, pollution, contamination and/or nuisance to the waters of the United States in

14   violation of Discharge Prohibition A(2) of the Industrial Stormwater Permit and the Water Quality

15   Standards set forth in the Basin Plan.

16   64.    The discharges of polluted stormwater from the Facilities have in the past caused or

17   contributed to, and continue to cause or contribute to, exceedances of Water Quality Standards in

18   violation of Receiving Water Limitation C(2) of the Industrial Stormwater Permit including sediment,

19   settleable matter, suspended materials, copper, lead, and zinc.

20   65.    Every day since at least December 18, 2007 that Lakeside has discharged polluted

21   stormwater from the Facilities in violation of the Industrial Stormwater Permit is a separate and

22   distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

23   66.    By committing the acts and omissions alleged above, Lakeside is subject to an

24   assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and

25   1365.

26   67.    An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

27   1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm

28   Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

---

COMPLAINT                                                                                    Page 11

1   law.

2       68.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

3   controversy exists as to the rights and other legal relations of the Parties.

4           Wherefore, Plaintiff prays for judgment against Lakeside as set forth hereafter.

5                              **SECOND CLAIM FOR RELIEF**

6   **Discharge in Violation of Effluent Limitations of the Industrial Stormwater Permit**

7                        **(Violations of 33 U.S.C. § 1311)**

8       69.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though

9   fully set forth herein.

10      70.     Lakeside has discharged and continues to discharge stormwater from the Facilities

11  containing levels of pollutants that do not achieve compliance with the BAT/BCT requirements in

12  violation of Effluent Limitation B(3) of the Industrial Stormwater Permit during every significant rain

13  event occurring from December 18, 2007 through the present.  Lakeside's failure to develop and/or

14  implement BMPs that achieve the pollutant discharge reductions attainable via BAT or BCT at the

15  Facilities, is a violation of Effluent Limitation B(3) of the Industrial Stormwater Permit and the CWA.

16  *See* Industrial Stormwater Permit, Order Part B(3); 33 U.S.C. § 1311(b).

17      71.     Every day since at least December 18, 2007 that Lakeside has discharged stormwater

18  containing pollutants in violation of Effluent Limitation E(3), Lakeside has failed to develop or

19  implement BMPs that achieve pollutant discharge reductions attainable via BAT or BCT at the

20  Facilities, in violation of the Industrial Stormwater Permit.  Each day is a separate and distinct

21  violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

22      72.     Lakeside's CWA violations described in the paragraphs above will continue in the

23  future until Lakeside develops and implements BMPs at the Facilities that achieve pollutant discharge

24  reductions attainable via BAT and BCT.

25      73.     By committing the acts and omissions alleged above, Lakeside is subject to an

26  assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

27  and 1365.

28      74.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

COMPLAINT                                                              Page 12

1   1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm

2   Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

3   law.

4        75.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

5   controversy exists as to the rights and other legal relations of the Parties.

6                Wherefore, Plaintiff prays for judgment against Lakeside as set forth hereafter.

7                              **THIRD CLAIM FOR RELIEF**

8   **Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan,**

9                   **in Violation of the Industrial Stormwater Permit**

10                       **(Violations of 33 U.S.C. § 1311)**

11       76.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though

12   fully set forth herein.

13       77.     Lakeside has failed and continues to fail to develop and implement adequate SWPPPs

14   or implement all necessary revisions to the SWPPPs for the Facilities as required by the Industrial

15   Stormwater Permit, Section A: Storm Water Pollution Prevention Plan (1), (2), and (9).

16       78.     Lakeside has failed and continues to fail to develop or implement SWPPPs for the

17   Facilities that include BMPs that meet the requirements of Section A: Storm Water Pollution

18   Prevention Plan Requirements of the Industrial Stormwater Permit.

19       79.     Lakeside has failed and continues to fail to develop or implement SWPPPs at the

20   Facilities that prevent discharges from violating the Discharge Prohibitions, Effluent Limitations, and

21   Receiving Water Limitations of the Industrial Stormwater Permit.

22       80.     Each day since December 18, 2007 that Lakeside has failed to adequately develop

23   and/or implement SWPPPs for the Facilities in violation of the Industrial Stormwater Permit is a

24   separate and distinct violation of CWA section 301(a), 33 U.S.C. § 1311(a).

25       81.     Lakeside has been in violation of the SWPPP requirements every day since December

26   18, 2007.  Lakeside will continue to be in violation of the SWPPP requirements each day that Lakeside

27   fails to develop and fully implement adequate SWPPPs for its Facilities.

28       82.     By committing the acts and omissions alleged above, Lakeside is subject to an

COMPLAINT                                                      Page 13

1    assessment of civil penalties pursuant to CWA sections 309(d) and 505, 33 U.S.C. §§ 1319(d) and

2    1365.

3          83.      An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

4    1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

5    Plaintiff and Plaintiff's members, for which harm they have no plain, speedy or adequate remedy at

6    law.

7          84.      An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

8    controversy exists as to the rights and other legal relations of the Parties.

9         Wherefore, Plaintiff prays for judgment against Lakeside as set forth hereafter.

10                      **FOURTH CLAIM FOR RELIEF**

11      **Failure to Develop and Implement an Adequate Monitoring and Reporting Program,**

12            **in Violation of the Industrial Stormwater Permit**

13                 **(Violations of 33 U.S.C. § 1311)**

14          85.      Plaintiff incorporates the allegations contained in all preceding paragraphs as though

15    fully set forth herein.

16          86.      Lakeside has failed and continues to fail to develop and implement adequate

17    monitoring and reporting programs ("MRP") and implement all necessary revisions to the MRPs at the

18    Facilities as required by the Industrial Stormwater Permit, Section B: Monitoring Program and

19    Reporting Requirements and Order Part E(3).

20          87.      Lakeside's MRPs have failed and continue to fail to ensure that discharges from the

21    Facilities are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving

22    Water Limitations as required in Sections B(2) and (10) of the Industrial Stormwater Permit.

23          88.      Lakeside has failed and continues to fail to effectively identify compliance problems at

24    the Facilities or effectively revise the SWPPPs to address such pollution problems as required by

25    Sections B(2-4) of the Industrial Stormwater Permit.

26          89.      Each day since December 18, 2007 that Lakeside has failed to develop and implement

27    adequate MRPs for the Facilities in violation of the Permit is a separate and distinct violation of CWA

28    section 301(a), 33 U.S.C. § 1311(a).

---

COMPLAINT

90.     Lakeside has been in violation of the MRP requirements every day since December 18, 2007.  Lakeside will continue to be in violation of the MRP requirements each day that Lakeside fails to develop and fully implement adequate MRPs for its Facilities.

91.     By committing the acts and omissions alleged above, Lakeside is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365.

92.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a).  Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

93.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

Wherefore, Plaintiff prays for judgment against Lakeside as set forth hereafter.

## FIFTH CLAIM FOR RELIEF

### Unpermitted Discharge of Pollutants in Violation of CWA Section 301(a)

### (Violations of 33 U.S.C. § 1311)

94.     Plaintiff incorporates the allegations contained in all preceding paragraphs as though fully set forth herein.

95.     Lakeside has discharged and continues to discharge pollutants from the Facilities in violation of the Industrial Stormwater Permit.  Thus, Lakeside's discharges are the unpermitted discharge of pollutants from the Facilities to waters of the United States without a permit, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

96.     Lakeside has been in violation of CWA section 301(a) every day it has discharged stormwater from the Facilities to waters of the United States since December 18, 2007.  Lakeside will continue to be in violation of the CWA each day that it discharges stormwater from the Facilities to waters of the United States.

97.     By committing the acts and omissions alleged above, Lakeside is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d)

COMPLAINT

1 and 1365.

2     98.     An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. §

3 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm

4 Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at

5 law.

6     99.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

7 controversy exists as to the rights and other legal relations of the Parties.

8     Wherefore, Plaintiff prays for judgment against Lakeside as set forth hereafter.

9 **RELIEF REQUESTED**

10     1.     Wherefore, Baykeeper respectfully requests this Court to grant the following relief:

11     a.     Declare Defendant to have violated and to be in violation of sections 301(a) and

12 (b) of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b), for discharging pollutants from its Facilities

13 in violation of a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, for failing to

14 meet effluent limitations which include Best Available Technology Economically Achievable

15 ("BAT") and Best Conventional Pollutant Control Technology ("BCT") requirements, and for failing

16 to comply with all substantive and procedural requirements of the following:

17     i.     The State of California's General Permit No. CAS000001, Water

18 Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater

19 Permit");

20     ii.     The San Francisco Bay Basin (Region 2) Water Quality Control Plan

21 (Basin Plan), as amended by Resolution No. R2-2010-0100 ("Basin Plan"); and

22     iii.     The California Toxics Rule, 65 Fed. Reg. 31682 (May 18, 2000), 40

23 C.F.R. § 131.38 ("CTR");

24     b.     Enjoin Defendant from discharging pollutants from its Facilities to the adjacent

25 Oakland Estuary and San Francisco Bay;

26     c.     Enjoin Defendant to restore all receiving waters damaged by Defendant's illegal

27 discharges of pollutants from the Facilities;

28     d.     Enjoin Defendant from violating sections 301(a) and (b) of the Clean Water Act

COMPLAINT     Page 16

at the Facilities;

             e.        Enjoin Defendant from violating the substantive and procedural requirements of the Industrial Stormwater Permit at the Facilities;

             f.        Enjoin Defendant from violating the substantive and procedural requirements of the Basin Plan at the Facilities;

             g.        Enjoin Defendant from violating the substantive and procedural requirements of the CTR at the Facilities;

             h.        Order Defendant to pay civil penalties of up to \$32,500 for all violations between January 21, 2006 and through January 12, 2009, and \$37,500 per day per violation for violations occurring after January 12, 2009 in accordance with CWA Section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. §§ 19.1-19.4 (2009).

             i.        Award plaintiff its costs (including reasonable attorney, witness, and consultant fees) as authorized by the CWA, 33 U.S.C. § 1365(d);

             j.        Award such other relief as this Court may deem appropriate.

Dated:  June 26, 2012

                              Respectfully Submitted,

By:
Sejal Choksi
Attorney for Plaintiff
BAYKEEPER

# EXHIBIT 1



SAN FRANCISCO
**BAYKEEPER**®

April 4, 2012

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

Lance Finkel
Jim Kinney
Lester Finkel
Lakeside Non-Ferrous Metals, Inc.
412 Madison Street
Oakland, CA 94607

Lance Finkel
Jim Kinney
Lester Finkel
Lakeside Non-Ferrous Metals, Inc.
455 9th Avenue
Oakland, CA 94606

**Re:    Notice of Violation and Intent to File Suit under the Clean Water Act**

Dear Sir or Madam:

I am writing on behalf of San Francisco Baykeeper ("Baykeeper") to give notice that Baykeeper intends to file a civil action against Lakeside Non-Ferrous Metals Incorporated ("You" or "Your" or "Lakeside"), d/b/a Lakeside Recycling, for Your violations of the Clean Water Act ("CWA") at the 412 Madison Street site and 455 9th Avenue site (individually, the "Madison St. Facility" and the "9th Ave. Facility," and collectively, the "Facilities") in Oakland, California.

This letter addresses Lakeside's unlawful discharge of pollutants from its industrial facilities into San Francisco Bay and the ongoing and continuous violations of the substantive and procedural requirements of the Clean Water Act and National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Stormwater Permit").

CWA section 505(b) requires that sixty (60) days prior to the initiation of a civil action under CWA section 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of his or her intent to file suit. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the violations occur.



COASTKEEPER
ALLIANCE      WATERKEEPER ALLIANCE
FOUNDING MEMBER

Pollution hotline: 1 800 KEEP BAY
www.baykeeper.org

785 Market Street, Suite 850
San Francisco, CA 94103
Tel (415) 856-0444
Fax (415) 856-0443

As required by the CWA, this Notice of Violation and Intent to File Suit provides notice of the violations that have occurred and which continue to occur at Lakeside's Facilities. Baykeeper's investigations have uncovered significant violations of the Industrial Stormwater Permit at Your Facilities. Consequently, You are hereby placed on formal notice from Baykeeper that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent to File Suit, Baykeeper intends to file suit in federal court against Lakeside under CWA section 505(a), 33 U.S.C. §1365(a), for CWA violations. These violations of the Order and the CWA are described more fully below.

During the 60-day notice period, we would like to discuss effective remedies for the violations identified in this letter. If You wish to pursue such discussions, we suggest that You initiate those discussions within the next twenty (20) days so that they may be completed at the conclusion of the 60-day notice period. It is our sincere desire to work with You to remedy the violations in a collaborative manner outside of court; however, please note that we do not intend to delay the filing of a complaint in federal court if discussions are still underway when the 60-day period ends.

## I.    BACKGROUND

Baykeeper is a non-profit public benefit corporation organized under the laws of California, with its main office in San Francisco, California. Baykeeper's purpose is to preserve, protect, and defend the environment, wildlife, and natural resources of San Francisco Bay, its tributaries, and other waters in the Bay Area. To further its goals, Baykeeper actively seeks federal and state agency implementation of state and federal water quality related laws, and as necessary, directly initiates enforcement actions on behalf of itself and its members. Baykeeper has over two thousand members who use and enjoy the San Francisco Bay and other waters for various recreational, educational, and spiritual purposes. Baykeeper's members' use and enjoyment of these waters are impacted by Lakeside's violations.

In most of the San Francisco Bay area, stormwater flows untreated either directly, or through the storm drain system, into San Francisco Bay and other receiving waters. The consensus among agencies and water quality specialists is that stormwater pollution accounts for more than half of the total pollution entering the Bay environment each year. With every rainfall event, hundreds of millions of gallons of polluted rainwater, originating from area industries, pour into the Bay and its tributaries. These contaminated stormwater discharges can and must be controlled for the Bay ecosystem to regain its health.

Discharges of stormwater and non-stormwater from non-ferrous metal and waste recycling facilities are of concern because the operational activities associated with these sites make various pollutants particularly accessible to stormwater. Specifically, facilities such as Lakeside that are engaged in collecting and handling recycling materials, including non-ferrous metals, tend to conduct these activities in areas open to wind and stormwater flows. Recycling facilities also generate dust and particulate matter, which settle on the ground and other surfaces that are exposed to storm water and non-storm

water runoff. Additionally, vehicles onsite can track dust, particulate matter, and other contaminants to areas on and off the premises and cause contaminants such as heavy metals to come into contact with stormwater flows.

## II.    THE LOCATION OF THE ALLEGED VIOLATIONS

The violations alleged in this notice letter have occurred and continue to occur at the Lakeside facility located at 412 Madison Street and the one located at 455 9th Avenue in Oakland, CA. Contaminated stormwater from the Facilities discharges into nearby storm drains, which are adjacent to and connected to the Oakland Estuary and San Francisco Bay. Violations of the substantive and procedural requirements of the General Industrial Permit and the Clean Water Act have occurred and continue to occur at the Facilities. Baykeeper is aware that historic agency and citizen enforcement against You has not remedied the Facilities' ongoing violations.

### A. 412 Madison Street

Lakeside Non-Ferrous Metals, Inc. operates a recycling collection facility located at 412 Madison Street Oakland, CA. The Facility is approximately the size of half of a city block and is bordered by Fifth Street to the north, Madison Street to the west, Fourth Street to the south, and by a commercial building and a gas station to the east. The property is located approximately 0.5 miles from the Oakland Estuary, which is connected to the San Francisco Bay, and all storm drains in the vicinity drain to the Bay. Lakeside collects stormwater from three discharge points at the Facility, although other discharge points exist at each entrance, exit, and below perimeter fencing.

### B. 455 9th Avenue

Lakeside Non-Ferrous Metals, Inc. also operates the Facility, located at 455 9th Avenue Oakland, CA. This Facility is directly adjacent to the Oakland Estuary and is bordered on the north by Embarcadero Street and Highway 880. All storm drains in the area of the property drain to the Oakland Estuary, which is connected to the San Francisco Bay. Lakeside collects samples from three discharge points at the site, although other discharge points may exist at each entrance, exit, and around the perimeter of the facility.

### C. The Affected Waters

Stormwater from the Facilities reaches San Francisco Bay, through discharges to the city storm drains and through Oakland Estuary, which is connected to the Bay. The Oakland Estuary and San Francisco Bay are waters of the United States. The CWA requires that water bodies such as San Francisco Bay meet water quality objectives, which protect specific "beneficial uses." The beneficial uses of the San Francisco Bay and its tributaries include commercial and sport fishing, estuarine habitat, fish migration, navigation, preservation of rare and endangered species, water contact and non-contact recreation, shellfish harvesting, fish spawning, and wildlife habitat.

The San Francisco Bay Basin (Region 2) Water Quality Control Plan ("Basin Plan") seeks to protect and maintain aquatic ecosystems and the resources those systems provide to society through water quality objectives and standards.[1]  The Basin Plan acknowledges discharges of urban industrial site stormwater as a significant source of pollution adversely affecting the quality of local waters.  Contaminated stormwater from Lakeside's Facilities adversely impacts the water quality of San Francisco Bay watershed and threatens the ecosystem of this watershed, which includes significant habitat for listed rare and endangered species.  The discharge of pollutants from Lakeside's Facilities also negatively impacts the water and aquatic sediments near the Facilities.

San Francisco Bay and its shoreline, tributaries, and adjacent wetlands are ecologically sensitive areas.  Although pollution and habitat destruction have drastically diminished the Bay's once-abundant and varied fisheries, the Bay and its wetlands and tributaries are still essential habitat for dozens of fish and bird species as well as macro-invertebrate and invertebrate species.  Stormwater contaminated with sediment, heavy metals, and other pollutants harms the special aesthetic and recreational significance that the San Francisco Bay has for people in the surrounding communities.  San Francisco Bay is used by kayakers and windsurfers, as well as recreational and subsistence anglers.  The public's usage of the San Francisco Bay for water contact sports exposes many people to toxic metals and other contaminants in stormwater runoff.  Non-contact recreational and aesthetic opportunities, such as wildlife observation, also are impaired by stormwater contaminants discharged to San Francisco Bay.

It is unlawful to discharge pollutants to waters of the United States, such as San Francisco Bay, without an NPDES permit or in violation of the terms and conditions of an NPDES permit.  Lakeside has submitted an NOI to be authorized to discharge stormwater at the Facilities under the Industrial Stormwater Permit.  Other than discharges covered under the Industrial Stormwater Permit, Lakeside lacks NPDES permit authorization for any other discharges of pollutants into waters of the United States.

Based on information available to Baykeeper, Lakeside has violated and is in violation of the Industrial Stormwater Permit and the Clean Water Act.  Consequently, Lakeside is hereby placed on formal notice from Baykeeper that, after the expiration of sixty (60) days from the date of this Notice of Violation and Intent To File Suit, Baykeeper intends to file suit in federal court against Lakeside and its owners and operators under CWA section 505(a), 33 U.S.C. § 1365(a), for violations of the CWA.

---

[1]  The Basin Plan is published by EPA at:
http://water.epa.gov/scitech/swguidance/standards/wqslibrary/upload/2009_03_16_standards_wqslibrary_c a_ca_9_san_francisco.pdf.  (Last accessed on 4/4/12).
The Basin Plan is also published by the Regional Board at:
http://www.waterboards.ca.gov/sanfranciscobay/basin_planning.shtml#2004basinplan.  (Last accessed on 4/4/12).

## III.   THE ACTIVITIES AT THE FACILITIES ALLEGED TO CONSTITUTE VIOLATIONS AND THE EFFLUENT LIMITATIONS VIOLATED

Operations at Lakeside's Facilities occur outdoors and are exposed to rainfall, and include but are not limited to: sorting and collecting of recyclable products, transporting materials on and off site, storage of materials, and truck operation. These kinds of industrial operations release pollutants into the environment. Outdoor service vehicles track dust, particulate matter, and other contaminants to areas on and off the premises at the Facilities. These vehicles may also introduce other sources of pollution to the area. These pollutants can include dust and debris; toxic metals such as copper, iron, and aluminum; oil, gasoline, and grease; chemical admixtures, battery fluids, acids and solvents; total suspended solids ("TSS") and pH-affecting substances, as well as other pollutants.

As a result of the pollutant-generating activities at Lakeside's Facilities that occur outdoors and that are exposed to rainfall, contaminated stormwater runs off Lakeside's Facilities and discharges into nearby storm drains leading to the Oakland Estuary and San Francisco Bay. Information available to Baykeeper indicates that Lakeside has failed to comply with all requirements of the Industrial Stormwater Permit. As further described below, these actions constitute violations of the Clean Water Act.

### A.   Discharges in Violation of the Industrial Stormwater Permit

The Clean Water Act provides that "the discharge of any pollutant by any person shall be unlawful" unless the discharger is in compliance with the terms of a NPDES permit. CWA § 301(a), 33 U.S.C. § 1311(a); *see also* CWA § 402(p), 33 U.S.C. § 1342(p) (requiring NPDES permit issuance for the discharge of stormwater associated with industrial activities). Lakeside's Facilities discharge stormwater associated with industrial activity to San Francisco Bay and its tributaries. The Industrial Stormwater Permit authorizes these discharges of stormwater, conditioned on compliance with the terms of the General Permit. Information available to Baykeeper indicates that stormwater discharges from the Facilities have violated several of these permit terms, thereby violating the CWA. *Id.*

#### 1.   Discharges in Excess of BAT/BCT Levels

The Effluent Limitations of the Industrial Stormwater Permit prohibit the discharge of pollutants from Lakeside's Facilities in concentrations above the level commensurate with the application of BAT and BCT. Industrial Stormwater Permit, Order Part B(3). EPA and the Santa Ana Regional Board have published Benchmark Values set at the maximum pollutant concentration present if an industrial facility is employing BAT and BCT.[2] Based on Lakeside's self-reported stormwater sampling

---

[2] These Benchmark Values are presented in Attachment 1 and can be found at:
http://www.waterboards.ca.gov/santaana/water_issues/programs/stormwater/docs/sbpermit/forms/benchmark_usepa_multisector.pdf, http://www.epa.gov/npdes/pubs/msgp2008_finalpermit.pdf, and

Notice of Intent to File Suit
April 4, 2012
Page 6 of 14

data, discharges of stormwater from the Facilities contain pollutant levels in excess of
Benchmark Values, an objective measure for determining whether discharges are in
compliance with BAT and BCT requirements for discharges of stormwater associated
with industrial activity. Available information indicates that You have failed and are
failing to employ measures that constitute BAT and BCT for recycling facilities in
violation of the requirements of the Industrial Stormwater Permit. Such BAT and BCT
measures could include, but are not limited to, moving certain polluting generating
activities under cover or indoors, capturing and effectively filtering or otherwise treating
all stormwater prior to discharge, sufficient sweeping to reduce the build-up of pollutants
on-site, and other similar measures for reducing stormwater pollutant discharges to the
limits of available, economically achievable technology.

Specific examples of instances when Lakeside's stormwater discharges exceeded
Benchmarks can be found in Attachments 2 and 3. These ongoing exceedances over the
past five years also indicate that each time Lakeside discharges stormwater, You are not
meeting BAT and BCT requirements. Baykeeper alleges and puts You on notice that
each day that Lakeside has discharged stormwater from the Facilities, the stormwater
contained levels of pollutants which may be exceeding Benchmark Values for pH, TSS,
Electrical Conductivity, COD, lead, iron, aluminum, copper and/or zinc, among other
pollutants. Baykeeper alleges that You have discharged stormwater containing excessive
levels of pollutants from the Facilities to nearby storm drains leading to the Oakland
Estuary and San Francisco Bay during at least every significant local rain event over 0.1
inches in the last five years.[3] Attachment 4 compiles all dates in the last five (5) years
when a significant rain event occurred.

Baykeeper alleges that unlawful discharges of stormwater from the Facilities with
levels of pollutants exceeding BAT and BCT levels of control have occurred and
continue to occur during all significant rain events. Further, Lakeside's ongoing
discharge of stormwater containing levels of pollutants above Benchmark Values and
BAT- and BCT-based levels of control necessarily means that Lakeside has not
developed and/or implemented sufficient BMPs at the Facilities to prevent stormwater
flows from coming into contact with the sources of contaminants at the Facilities or
otherwise to control the discharge of pollutants from the Facilities. Lakeside has not
developed and/or implemented adequate pollution controls to meet BAT and BCT at the
Facilities and has violated and will continue to violate the Clean Water Act each and
every day that stormwater is discharged without meeting BAT/BCT. Each discharge of
stormwater from the Facilities constitutes a separate violation of the Industrial
Stormwater Permit and the CWA. These violations occurred on the dates in Attachments
2 and 3, as well as each day in Attachment 4 in which rainfall was greater than 0.1
inches. You are subject to civil penalties for violations of the Industrial Stormwater
Permit and the CWA within the past five (5) years.

---

http://www.waterboards.ca.gov/santaana/water_issues/programs/stormwater/docs/sbpermit/forms/benchma
rk_regionalboard.pdf. (Last accessed on 4/4/12).

[3] Significant local rain events are reflected in the rain gauge data available at http://cdec.water.ca.gov and
http://lwf.ncdc.noaa.gov/oa/ncdc.html. (Last accessed on 4/4/12).

Notice of Intent to File Suit
April 4, 2012
Page 7 of 14

## 2. Discharges Impairing Receiving Waters

The Industrial Stormwater Permit's Discharge Prohibitions prohibit stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance. *See* Industrial Stormwater Permit, Order Part A(2). The Industrial Stormwater Permit also prohibits stormwater discharges to surface or groundwater that adversely impact human health or the environment. *Id.* at Order Part C(1). Receiving Water Limitations of the Industrial Stormwater Permit prohibit stormwater discharges that cause or contribute to an exceedance of applicable Water Quality Standards ("WQS"). *Id.* at Order Part C(2). Applicable WQSs are set forth in the California Toxics Rule ("CTR")[4] and the Basin Plan and found in Attachment 5. Exceedances of WQSs are violations of the Industrial Stormwater Permit, the CTR, and the Basin Plan.

The Basin Plan, *inter alia*, establishes the following Water Quality Standards for San Francisco Bay and its tributaries:

- Waters shall not contain substances in concentrations that result in the deposition of material that cause nuisance or adversely affect beneficial uses.

- Waters shall not contain suspended material in concentrations that cause nuisance or adversely affect beneficial uses.

- Waters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses. Increases from normal background light penetration or turbidity relatable to waste discharge shall not be greater than 10 percent in areas where natural turbidity is greater than 50 NTU.

- All waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce other detrimental responses in aquatic organisms. Detrimental responses include, but are not limited to, decreased growth rate and decreased reproductive success of resident or indicator species. There shall be no acute toxicity in ambient waters. Acute toxicity is defined as a median of less than 90 percent survival, or less than 70 percent survival, 10 percent of the time, of test organisms in a 96-hour static or continuous flow test. There shall be no chronic toxicity in ambient waters. Chronic toxicity is a detrimental biological effect on growth rate, reproduction, fertilization success, larval development, population abundance, community composition, or any other relevant measure of the health of an organism, population, or community.

---

[4] The CTR is set forth at 40 C.F.R. § 131.38 and is explained in the Federal Register preamble accompanying the CTR promulgation set forth at 65 Fed. Reg. 31682.

- Surface waters shall not contain concentrations of chemical constituents in amounts that adversely affect any designated beneficial use.  See the Basin Plan's Table 3-3 for specific marine water quality objectives for toxic pollutants.[5]

Baykeeper alleges that Lakeside's stormwater discharges have caused or contributed to exceedances of the Water Quality Standards set forth in the Basin Plan and California Toxics Rule.  Attachments 2 and 3 to this Notice Letter compile the self-monitoring data reported by Lakeside pursuant to the Industrial Stormwater Permit to the Regional Board, reflecting Lakeside's sampling of actual stormwater discharges.  Based on information available to Baykeeper, the sample results reflected in Attachments 2 and 3 are representative of the pollutant levels in the Facilities' discharges of stormwater.  Thus, every instance when the Facilities have discharged stormwater, including instances when the Facilities have discharged stormwater that Lakeside has not sampled, these stormwater discharges contained levels of pollutants comparable to the levels set forth in Attachments 2 and 3.  Therefore, You are exceeding Benchmarks on all days when stormwater is discharging from Your Facilities, in addition to those days when You have sampled stormwater.

Attachments 2 and 3 indicate that You routinely discharge stormwater to San Francisco Bay containing the following pollutants: low pH, TSS, Electrical Conductivity, COD, lead, iron, aluminum, copper, nickel, and/or zinc.  The levels of these pollutants in Your stormwater discharges have caused pollution, contamination, or nuisance in violation of the Discharge Prohibitions of the Industrial Stormwater Permit, and have adversely impacted the environment in violation of the Receiving Water Limitations of the Industrial Stormwater Permit.  *See* Industrial Stormwater Permit, Order Parts A(2) and C(2).  Moreover, the discharge of these pollutants has caused or contributed to San Francisco Bay's failure to attain one or more applicable Water Quality Standards in violation of the Receiving Water Limitations.  *Id.* at Order Part C(2).

Baykeeper alleges that each day that Lakeside discharged stormwater from the Facilities, Your stormwater contained levels of pollutants that exceeded one or more of the applicable Water Quality Standards in San Francisco Bay.  Lakeside discharged stormwater from the Facilities during at least every significant local rain event over 0.1 inches that have caused or contributed to Water Quality Standards not being met in San Francisco Bay in the last five years.  Significant local rain events in the last five (5) years are compiled in Attachment 4 and otherwise available at http://cdec.water.ca.gov and http://lwf.ncdc.noaa.gov/oa/ncdc.html (Last accessed on 4/4/12).

Lakeside's unlawful discharges from the Facilities have occurred and continue to occur presently during all significant rain events.  Each and every day that stormwater discharges from Your Facilities is a violation of the Industrial Stormwater Permit and the

---

[5] Basin Plan, Table 3-3 is available at:
http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/tab/tab_3-03.pdf.  (Last accessed on 4/4/12).

CWA because You are failing to meet BAT and BCT. In addition, each discharge from Your Facilities that has caused or contributed, or causes or contributes to an exceedance of an applicable Water Quality Standard constitutes a separate violation of the Industrial Stormwater Permit and the CWA. You are subject to penalties for violations of the Industrial Stormwater Permit and the CWA within the past five (5) years.

### 3. Failure to Develop and/or Implement an Adequate Storm Water Pollution Prevention Plan ("SWPPP"), as Required by the Industrial Stormwater Permit.

The Industrial Stormwater Permit requires dischargers covered by the Industrial Stormwater Permit and commencing industrial activities before October 1, 1992 to develop and implement an adequate SWPPP by October 1, 1992. Industrial Stormwater Permit, Section A: Storm Water Pollution Prevention Plan Requirements, (1)(a). The Industrial Stormwater Permit also requires dischargers to make all necessary revisions to existing SWPPPs promptly, and in any case no later than August 1, 1997. *Id.* at Order Part E(2).

The SWPPP must include, among other requirements, the following: (a) identification of all the members of a stormwater pollution prevention team responsible for developing and implementing the SWPPP (*Id.* at Section A(3)); (b) a site map showing the stormwater conveyance system and areas of actual and potential pollutant contact and all areas of on-going industrial activity (*Id.* at Section A(4)); (c) a list of significant materials handled and stored at the site including quantities and frequencies (*Id.* at Section A(5)); (d) a description of all potential pollutant sources, industrial processes, material handling and storage, dust and particulate generating activities, significant spills and leaks, non-stormwater discharges, and potential soil erosion activity (*Id.* at Section A(6)); (e) an assessment of potential pollutant sources at the facility and a description of the BMPs to be implemented at the facility that will reduce or prevent pollutants in stormwater discharges and authorized non-stormwater discharges, including structural BMPs where non-structural BMPs are not effective (*Id.* at Sections A(7-8)); (f) specification of BMPs designed to reduce pollutant discharge to BAT and BCT levels, including BMPs already existing and BMPs to be adopted or implemented in the future (*Id.* at Section A(8)); (g) a comprehensive site compliance evaluation completed each reporting year, and revisions to the SWPPP as necessary after the evaluation has been completed (*Id.* at Section A(9)); and (h) revisions to the SWPPP within 90 days after a facility manager determines that the SWPPP is in violation of any requirements of the Industrial Stormwater Permit (*Id.* at Section A(10)). Facility operators are required to at all times properly operate and maintain any facilities and systems of treatment and control (and related appurtenances) which have been installed or used to achieve compliance with the conditions of the Industrial Stormwater Permit and the requirements of the SWPPP. *Id.* at Order Part C(5).

Lakeside's SWPPPs do not include, and Lakeside has not implemented, adequate BMPs designed to reduce pollutant levels in discharges to BAT and BCT levels in accordance with Section A(8) of the Industrial Stormwater Permit, as evidenced by open

sources of pollutants on site, contaminant tracking around and off site, and the Facilities' discharges of stormwater contaminated with pollutants above levels attainable via application of BAT and BCT. Lakeside's failure to prepare and/or implement adequate SWPPPs and/or to revise the SWPPPs in all the above respects constitutes violations of the Industrial Stormwater Permit, Section A(8) (SWPPP must specify BMPs necessary to attain BAT and BCT levels that are tailored to site conditions).

Accordingly, You have violated the Clean Water Act each and every day You have failed to develop and/or implement adequate SWPPPs meeting all of the requirements of Section A of the Industrial Stormwater Permit, and You will continue to be in violation every day that You fail to develop and/or implement adequate SWPPPs. You are subject to penalties for violations of the Industrial Stormwater Permit and the CWA occurring within the past five (5) years.

### 4. Failure to Develop and Implement Adequate Monitoring and Reporting Programs and Perform Annual Comprehensive Site Compliance Evaluations as Required by the Industrial Stormwater Permit.

The Industrial Stormwater Permit requires facility operators to develop and to implement a Monitoring and Reporting Program ("MRP") by October 1, 1992 or when industrial activities begin at a facility. Industrial Stormwater Permit, Section B: Monitoring Program and Reporting Requirements, (1) and Order Part E(3). The Industrial Stormwater Permit requires that the MRP ensure that each facility's stormwater discharges comply with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the Industrial Stormwater Permit. *Id.* at Section B(2). Facility operators must ensure that their MRP practices reduce or prevent pollutants in stormwater and authorized non-stormwater discharges as well as evaluate and revise their practices to meet changing conditions at the facility. *Id.* This may include revising the SWPPP as required by Section A of the Industrial Stormwater Permit. The MRP must measure the effectiveness of BMPs used to prevent or reduce pollutants in stormwater and authorized non-stormwater discharges, and facility operators must revise the MRP whenever appropriate. *Id.* Facility operators are also required to provide an explanation of monitoring methods describing how the facility's monitoring program will satisfy these objectives. *Id.* at Section B(10).

Pursuant to the monitoring and reporting requirements of the Industrial Stormwater Permit, facility operators must conduct and record visual observations of all drainage locations at the facility for authorized non-stormwater, unauthorized non-stormwater, and stormwater discharges throughout the year. *Id.* at Sections B(3), (4), and (8). Facility operators must also implement responsive measures to eliminate unauthorized non-stormwater discharges, to reduce or prevent pollutants from contacting non-stormwater discharges, and to reduce or prevent pollutants in stormwater discharges. *Id.* at Sections B(3), (4), and (7).

In addition to conducting visual observations, facility operators are required to collect and sample stormwater runoff during the first hour of discharge from the first

storm event of the wet season and at least one other storm event in the wet season. *Id.* at Section B(5)(a). Facility operators that do not collect samples from the first storm event of the wet season are required to explain in the Annual Report why the first storm event was not sampled. *Id.* If either sample collection or monthly visual observations of stormwater discharges occur more than one hour after discharge begins, facility operators must explain in the Annual Report why the sampling occurred more than one hour after discharges began. *Id.* at Section B(8)(b).

To achieve the objectives of the monitoring program, facility operators must comply with certain procedural requirements, including explaining monitoring methods; providing a description of the visual observation and sampling methods, location, and frequency; and identifying the analytical methods and corresponding method of detection limits used to detect pollutants in stormwater discharges. *Id.* at Section B(10). Facility operators must submit an Annual Report by July 1 each year to the Regional Water Board that includes a summary of visual observations and sampling results, laboratory reports, the Annual Comprehensive Site Compliance Evaluation Report, an explanation of why a facility did not implement any required activities, and records specified in Sections B(13)-(14).

Lakeside has been operating the Facilities with inadequately developed and/or inadequately implemented MRPs, in violation of the substantive and procedural requirements set forth above. Your monitoring programs have not ensured that stormwater discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations of the Industrial Stormwater Permit as required by Section B(2). The monitoring programs have not resulted in practices at the Facilities that adequately reduce or prevent pollutants in stormwater as required by Order Part B(2). Lakeside's MRPs have not effectively identified or responded to compliance problems at the Facilities or resulted in effective revision of BMPs in use or the Facilities' SWPPPs to address such ongoing problems as required by Section B(2) of the Industrial Stormwater Permit.

As a result of Your failure to adequately develop and/or implement adequate MRPs at the Facilities, You have been in daily and continuous violation of the Industrial Stormwater Permit and the CWA on each and every day for the last five years. These violations are ongoing. You will continue to be in violation of the monitoring and reporting requirements every day You fail to adequately develop and/or implement effective MRPs at the Facilities. You are subject to penalties for each violation of the Industrial Stormwater Permit and the CWA occurring for the last five (5) years.

## 5.   Discharges Without Permit Coverage.

Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by a NPDES permit issued pursuant to section 402 of the Clean Water Act. *See* 33 U.S.C. §§ 1311(a), 1342. In turn, You have sought coverage under the Industrial Stormwater Permit, which states that any discharge from an industrial facility not in

Notice of Intent to File Suit
April 4, 2012
Page 12 of 14

compliance with the Industrial Stormwater Permit "must be either eliminated or permitted by a separate NPDES permit." Industrial Stormwater Permit, Order Part A(1). Because You have not obtained coverage under any separate NPDES permit, and have not eliminated discharges not permitted by the Industrial Stormwater Permit, each and every discharge from Your Facilities described herein not in compliance with the Industrial Stormwater Permit has constituted and will continue to constitute a discharge without CWA permit coverage in violation of section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a).

## IV.    PERSONS RESPONSIBLE FOR THE VIOLATIONS

Lakeside Non-Ferrous Metals, Inc., d/b/a as Lakeside Recycling, is the person responsible for the violations at the Facilities described above.

## V.    NAME AND ADDRESS OF NOTICING PARTY

Our name, address, and telephone number is as follows:

San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA  94103
(415) 856-0444

## VI.    COUNSEL

Baykeeper is represented by the following counsel in this matter, to whom all communications should be directed:

Jason Flanders
Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA  94103
(415) 856-0444
jason@baykeeper.org
andrea@baykeeper.org

Sejal Choksi
3378 S. Lucille Lane Suite B
Lafayette, CA 94549
(925) 330-7757
sejal@baykeeper.org

## VII.    REMEDIES

Notice of Intent to File Suit
April 4, 2012
Page 13 of 14

   Baykeeper will seek declaratory and injunctive relief preventing further CWA violations pursuant to CWA sections 505(a) and (d), 33 U.S.C. §1365(a) and such other relief as permitted by law.  In addition, Baykeeper will seek civil penalties pursuant to CWA section 309(d), 33 U.S.C. § 1319(d) and 40 C.F.R. section 19.4, against You in this action.  The CWA imposes civil penalty liability of up to $32,500 per day per CWA violation for violations occurring from March 15, 2004 through January 12, 2009, and $37,500 per day per violation for violations occurring after January 12, 2009.  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (2009).  Baykeeper will seek to recover attorneys' fees, experts' fees, and costs in accordance with CWA section 505(d), 33 U.S.C. § 1365(d).

   Baykeeper intends, at the close of the 60-day notice period or thereafter, to file a citizen suit under CWA section 505(a) against You for the above-referenced violations. During the 60-day notice period, we are willing to discuss effective remedies for the violations noted in this letter.  We suggest that You contact us within the next twenty (20) days so that these discussions may be completed by the conclusion of the 60-day notice period.  Please note that we do not intend to delay the filing of a complaint in federal court even if discussions are underway when the notice period ends.

                         Sincerely,

                         Jason Flanders
                         Attorney for San Francisco Baykeeper

Notice of Intent to File Suit
April 4, 2012
Page 14 of 14

Cc:

| | |
|---|---|
| Lisa Jackson<br>Administrator<br>US EPA, Ariel Rios Building<br>1200 Pennsylvania Avenue, N.W.<br>Mail Code: 1101A<br>Washington, D.C. 20460 | Eric H. Holder, Jr.<br>U.S. Attorney General<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001 |
| Jared Blumenfeld<br>Regional Administrator<br>U.S. EPA - Region 9<br>75 Hawthorne Street<br>San Francisco, CA 94105 | Thomas Howard<br>Executive Director<br>State Water Resources Control Board<br>1001 I Street<br>Sacramento, CA 95814 |
| Bruce Wolfe<br>Executive Officer<br>Regional Water Quality Control Board<br>San Francisco Bay Region<br>1515 Clay Street, Suite 1400<br>Oakland, CA 94612 | |

## Attachment 1: EPA Benchmarks

| Parameter | Units | Benchmark value |
|---|---|---|
| Biochemical Oxygen Demand | mg/L | 30 |
| Chemical Oxygen Demand (COD) | mg/L | 120 |
| Total Suspended Solids (TSS) | mg/L | 100 |
| Oil and Grease | mg/L | 15 |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 |
| Total Phosphorus | mg/L | 2 |
| pH | SU - low | 6 |
| pH | SU - high | 9 |
| Acrylonitrile | mg/L | 7.55 |
| Aluminum  Total | mg/L | 0.75 |
| Ammonia  Total (as N) | mg/L | 19 |
| Antimony, Total | mg/L | 0.636 |
| Arsenic  Total | mg/L | 0.16854 |
| Benzene | mg/L | 0.01 |
| Beryllium, Total | mg/L | 0.13 |
| Butylbenzyl Phthalate | mg/L | 3 |
| Chloride | mg/L | 860 |
| Copper  Total | mg/L | 0.0636 |
| Dimethyl Phthalate | mg/L | 1 |
| Ethylbenzene | mg/L | 3.1 |
| Fluoranthene | mg/L | 0.042 |
| Fluoride | mg/L | 1.8 |
| Iron  Total | mg/L | 1 |
| Lead  Total | mg/L | 0.0816 |
| Manganese | mg/L | 1 |
| Mercury  Total | mg/L | 0.0024 |
| Nickel  Total | mg/L | 1.417 |
| PCB-1016 | mg/L | 0.000127 |
| PCB-1221 | mg/L | 0.1 |
| PCB-1232 | mg/L | 0.000318 |
| PCB-1242 | mg/L | 0.0002 |
| PCB-1248 | mg/L | 0.002544 |
| PCB-1254 | mg/L | 0.1 |
| PCB-1260 | mg/L | 0.000477 |
| Phenols, Total | mg/L | 1 |
| Pyrene | mg/L | 0.01 |
| Selenium  Total | mg/L | 0.2385 |
| Silver  Total | mg/L | 0.0318 |
| Toluene | mg/L | 10 |
| Trichloroethylene | mg/L | 0.0027 |
| Zinc  Total | mg/L | 0.117 |
| Cyanide  Total (as CN) | mg/L | 0.0636 |
| Magnesium  Total | mg/L | 0.0636 |
| Electrical Conductivity @ 25 Deg. C | umhos/cm | 200 |

# Attachment 2:  Table of Violations for Lakeside Non-Ferrous, 455 9th Avenue

Table containing each stormwater sample result provided by Lakeside in which samples exceed Water
Quality Standards (yellow), or EPA Benchmarks (green), or both (green).  Samples listed are only from the
last 5 years.  The EPA Benchmarks and Water Quality Standards are listed at the end of the table.  Samples
collected by Lakeside at 455 9th Avenue Oakland, California.

| No. | Sample Location | Date | Parameter | | Value | Units | Wet Season |
|-----|-----------------|------|-----------|---|-------|-------|------------|
| 1 | LM9 – 1 | 12/18/07 | Lead  Total | = | 0.19 | mg/L | 2007-2008 |
| 2 | LM9 - 1 | 12/18/07 | Copper  Total | = | 0.37 | mg/L | 2007-2008 |
| 3 | LM9 - 1 | 12/18/07 | Zinc  Total | = | 0.23 | mg/L | 2007-2008 |
| 4 | LM9 - 1 | 12/18/07 | Iron  Total | = | 1.6 | mg/L | 2007-2008 |
| 5 | LM9 - 1 | 12/18/07 | Aluminum  Total | = | 1.1 | mg/L | 2007-2008 |
| 6 | LM9 - 2 | 12/18/07 | Copper  Total | = | 0.23 | mg/L | 2007-2008 |
| 7 | LM9 - 2 | 12/18/07 | Lead  Total | = | 0.15 | mg/L | 2007-2008 |
| 8 | LM9 - 2 | 12/18/07 | Zinc  Total | = | 0.18 | mg/L | 2007-2008 |
| 9 | LM9 - 2 | 12/18/07 | Iron  Total | = | 1.5 | mg/L | 2007-2008 |
| 10 | LM9 - 2 | 12/18/07 | Aluminum  Total | = | 1.1 | mg/L | 2007-2008 |
| 11 | LM9 - 3 | 12/18/07 | Zinc  Total | = | 0.33 | mg/L | 2007-2008 |
| 12 | LM9 - 3 | 12/18/07 | Copper  Total | = | 0.043 | mg/L | 2007-2008 |
| 13 | LM9 - 1 | 4/7/09 | Copper  Total | = | 0.061 | mg/L | 2008-2009 |
| 14 | LM9 - 2 | 4/7/09 | Zinc  Total | = | 1 | mg/L | 2008-2009 |
| 15 | LM9 - 2 | 4/7/09 | Copper  Total | = | 0.04 | mg/L | 2008-2009 |
| 16 | LM9 - 3 | 4/7/09 | Zinc  Total | = | 4.6 | mg/L | 2008-2009 |
| 17 | LM9 - 3 | 4/7/09 | Iron  Total | = | 1.1 | mg/L | 2008-2009 |
| 18 | LM9 - 3 | 4/7/09 | Copper  Total | = | 0.086 | mg/L | 2008-2009 |
| 19 | LM9 - 1 | 10/13/09 | Lead  Total | = | 0.15 | mg/L | 2009-2010 |
| 20 | LM9 - 1 | 10/13/09 | Zinc  Total | = | 0.42 | mg/L | 2009-2010 |
| 21 | LM9 - 1 | 10/13/09 | pH | = | 5.9 | SU | 2009-2010 |
| 22 | LM9 - 1 | 10/13/09 | Copper  Total | = | 0.25 | mg/L | 2009-2010 |
| 23 | LM9 - 1 | 10/13/09 | Nickel  Total | = | 0.33 | mg/L | 2009-2010 |
| 24 | LM9 - 2 | 10/13/09 | Lead  Total | = | 0.13 | mg/L | 2009-2010 |
| 25 | LM9 - 2 | 10/13/09 | Zinc  Total | = | 0.66 | mg/L | 2009-2010 |
| 26 | LM9 - 2 | 10/13/09 | pH | = | 5.7 | SU | 2009-2010 |
| 27 | LM9 - 3 | 10/13/09 | Zinc  Total | = | 1.7 | mg/L | 2009-2010 |
| 28 | LM9 - 3 | 10/13/09 | Copper  Total | = | 0.033 | mg/L | 2009-2010 |
| 29 | LM9 - 1 | 1/20/10 | Zinc  Total | = | 1.7 | mg/L | 2009-2010 |
| 30 | LM9 - 1 | 1/20/10 | Copper  Total | = | 0.061 | mg/L | 2009-2010 |
| 31 | LM9 - 2 | 1/20/10 | Zinc  Total | = | 1.8 | mg/L | 2009-2010 |
| 32 | LM9 - 2 | 1/20/10 | Copper  Total | = | 0.023 | mg/L | 2009-2010 |
| 33 | LM9 - 3 | 1/20/10 | Zinc  Total | = | 4.2 | mg/L | 2009-2010 |
| 34 | LM9 - 3 | 1/20/10 | Copper  Total | = | 0.021 | mg/L | 2009-2010 |

| 35 | LM9 - 1 | 5/16/11 | Zinc Total | = | 4.1 | mg/L | 2010-2011 |
| 36 | LM9 - 2 | 5/16/11 | Copper Total | = | 0.044 | mg/L | 2010-2011 |
| 37 | LM9 - 2 | 5/16/11 | Zinc Total | = | 3.8 | mg/L | 2010-2011 |
| 38 | LM9 - 3 | 5/16/11 | Copper Total | = | 0.027 | mg/L | 2010-2011 |
| 39 | LM9 - 3 | 5/16/11 | Zinc Total | = | 1.5 | mg/L | 2010-2011 |
| 40 | LM9 - 3 | 5/16/11 | Total Suspended Solids (TSS) | = | 180 | mg/L | 2010-2011 |

**Criteria - EPA Benchmarks**

| Parameter | Units | Benchmark Value | Source |
|---|---|---|---|
| Chemical Oxygen Demand (COD) | mg/L | 120 | MSGP(b) |
| Total Suspended Solids (TSS) | mg/L | 100 | MSGP(a) |
| Oil and Grease | mg/L | 15 | MSGP(b) |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 | MSGP(b) |
| pH | SU - low | 6 | MSGP(b) |
| pH | SU - high | 9 | MSGP(b) |
| Aluminum Total | mg/L | 0.75 | MSGP(a) |
| Ammonia Total (as N) | mg/L | 19 | MSGP(b) |
| Arsenic Total | mg/L | 0.16854 | MSGP(b) |
| Benzene | mg/L | 0.01 | MSGP(b) |
| Copper Total | mg/L | 0.0636 | MSGP(b)* |
| Iron Total | mg/L | 1 | MSGP(b) |
| Lead Total | mg/L | 0.0816 | MSGP(b)* |
| Toluene | mg/L | 10 | MSGP(b) |
| Mercury Total | mg/L | 0.0024 | MSGP(b) |
| Nickel Total | mg/L | 1.417 | MSGP(b)* |
| Phenols, Total | mg/L | 1 | MSGP(b) |
| Pyrene | mg/L | 0.01 | MSGP(b) |
| Selenium Total | mg/L | 0.2385 | MSGP(b) |
| Silver Total | mg/L | 0.0318 | MSGP(b)* |
| Cadmium Total | mg/L | 0.0159 | MSGP(b)* |
| Trichloroethylene | mg/L | 0.0027 | MSGP(b) |
| Zinc Total | mg/L | 0.117 | MSGP(b)* |
| Cyanide Total (as CN) | mg/L | 0.0636 | MSGP(b) |
| Magnesium Total | mg/L | 0.0636 | MSGP(b) |
| Electrical Conductivity @ 25 Deg. C | umhos/cm | 200 | |

MSGP (a) = 2008 sector-specific numeric limits
MSGP (b) = 2000 benchmarks
*Hardness dependent in freshwater

2

**Criteria - Basin Plan**

| Parameter | Units | Benchmark Value | Source |
|---|---|---|---|
| Arsenic  Total | mg/L | 0.069 | BP |
| Cadium, Total | mg/L | 0.042 | BP |
| Chromium VI | mg/L | 1.1 | BP |
| Copper Total | mg/L | 0.0108 | BP - SSOs |
| Cyanide  Total (as CN) | mg/L | 0.0094 | BP - SSOs |
| Lead  Total | mg/L | 0.22 | BP |
| Mercury  Total | mg/L | 0.0021 | BP |
| Selenium  Total | mg/L | 0.29 | BP |
| Silver  Total | mg/L | 0.0019 | BP |
| Zinc  Total | mg/L | 0.09 | BP |
| PAHs | mg/L | 0.015 | BP |
| Nickel  Total | mg/L | 0.0624 | BP - SSOs |

BP = Basin Plan
SSO = Site Specific
Objectives

# Attachment 3:  Table of Violations for Lakeside Non-Ferrous, 412 Madison St

Table containing each stormwater sample result provided by Lakeside in which samples exceed Water
Quality Standards (yellow), or EPA Benchmarks (green), or both (green).  Samples listed are only from the
last 5 years.  The EPA Benchmarks and Water Quality Standards are listed at the end of the table.  Samples
collected by Lakeside at 412 Madison Street Oakland, California.

| No. | Sample Location | Date | Parameter | | Value | Units | Wet Season |
|---|---|---|---|---|---|---|---|
| 1 | Lmm-1 | 12/18/07 | Lead Total | = | 0.29 | mg/L | 2007-2008 |
| 2 | Lmm-1 | 12/18/07 | Zinc Total | = | 0.35 | mg/L | 2007-2008 |
| 3 | Lmm-1 | 12/18/07 | Iron Total | = | 3 | mg/L | 2007-2008 |
| 4 | Lmm-1 | 12/18/07 | Aluminum Total | = | 0.78 | mg/L | 2007-2008 |
| 5 | Lmm-2 | 12/18/07 | Lead Total | = | 0.22 | mg/L | 2007-2008 |
| 6 | Lmm-2 | 12/18/07 | Zinc Total | = | 0.25 | mg/L | 2007-2008 |
| 7 | Lmm-2 | 12/18/07 | Aluminum Total | = | 0.78 | mg/L | 2007-2008 |
| 8 | Lmm-3 | 12/18/07 | Lead Total | = | 0.24 | mg/L | 2007-2008 |
| 9 | Lmm-3 | 12/18/07 | Zinc Total | = | 0.29 | mg/L | 2007-2008 |
| 10 | Lmm-3 | 12/18/07 | Iron Total | = | 1.1 | mg/L | 2007-2008 |
| 11 | Lmm-3 | 12/18/07 | Aluminum Total | = | 0.96 | mg/L | 2007-2008 |
| 12 | Lmm-1 | 4/7/09 | Copper Total | = | 0.33 | mg/L | 2008-2009 |
| 13 | Lmm-1 | 4/7/09 | pH | = | 5.9 | SU | 2008-2009 |
| 14 | Lmm-1 | 4/7/09 | Lead Total | = | 0.17 | mg/L | 2008-2009 |
| 15 | Lmm-1 | 4/7/09 | Zinc Total | = | 0.35 | mg/L | 2008-2009 |
| 16 | Lmm-1 | 4/7/09 | Iron Total | = | 1.7 | mg/L | 2008-2009 |
| 17 | Lmm-1 | 4/7/09 | Aluminum Total | = | 1.4 | mg/L | 2008-2009 |
| 18 | Lmm-2 | 4/7/09 | Copper Total | = | 0.052 | mg/L | 2008-2009 |
| 19 | Lmm-2 | 4/7/09 | pH | = | 5.6 | SU | 2008-2009 |
| 20 | Lmm-2 | 4/7/09 | Zinc Total | = | 0.23 | mg/L | 2008-2009 |
| 21 | Lmm-3 | 4/7/09 | Lead Total | = | 0.11 | mg/L | 2008-2009 |
| 22 | Lmm-3 | 4/7/09 | Zinc Total | = | 0.62 | mg/L | 2008-2009 |
| 23 | Lmm-3 | 4/7/09 | Iron Total | = | 1.2 | mg/L | 2008-2009 |
| 24 | Lmm-3 | 4/7/09 | Aluminum Total | = | 0.93 | mg/L | 2008-2009 |
| 25 | Lmm-3 | 4/7/09 | Copper Total | = | 0.23 | mg/L | 2008-2009 |
| 26 | Lmm-1 | 10/13/09 | Zinc Total | = | 0.28 | mg/L | 2009-2010 |
| 27 | Lmm-1 | 10/13/09 | Copper Total | = | 0.3 | mg/L | 2009-2010 |
| 28 | Lmm-1 | 10/13/09 | Nickel Total | = | 0.2 | mg/L | 2009-2010 |
| 29 | Lmm-2 | 10/13/09 | Zinc Total | = | 0.83 | mg/L | 2009-2010 |
| 30 | Lmm-2 | 10/13/09 | Copper Total | = | 0.08 | mg/L | 2009-2010 |
| 31 | Lmm-3 | 10/13/09 | Zinc Total | = | 0.25 | mg/L | 2009-2010 |
| 32 | Lmm-3 | 10/13/09 | Lead Total | = | 0.096 | mg/L | 2009-2010 |
| 33 | Lmm-3 | 10/13/09 | Iron Total | = | 1.2 | mg/L | 2009-2010 |
| 34 | Lmm-3 | 10/13/09 | Copper Total | = | 0.3 | mg/L | 2009-2010 |

| 35 | Lmm-3 | 10/13/09 | Nickel Total | = | 0.13 | mg/L | 2009-2010 |
|---|---|---|---|---|---|---|---|
| 36 | Lmm-1 | 1/20/10 | Lead Total | = | 0.28 | mg/L | 2009-2010 |
| 37 | Lmm-1 | 1/20/10 | Zinc Total | = | 0.81 | mg/L | 2009-2010 |
| 38 | Lmm-1 | 1/20/10 | Iron Total | = | 1.1 | mg/L | 2009-2010 |
| 39 | Lmm-1 | 1/20/10 | Aluminum Total | = | 1.6 | mg/L | 2009-2010 |
| 40 | Lmm-1 | 1/20/10 | pH | = | 5.9 | SU | 2009-2010 |
| 41 | Lmm-1 | 1/20/10 | Copper Total | = | 0.47 | mg/L | 2009-2010 |
| 42 | Lmm-2 | 1/20/10 | Zinc Total | = | 0.34 | mg/L | 2009-2010 |
| 43 | Lmm-2 | 1/20/10 | pH | = | 5.5 | SU | 2009-2010 |
| 44 | Lmm-2 | 1/20/10 | Copper Total | = | 0.09 | mg/L | 2009-2010 |
| 45 | Lmm-3 | 1/20/10 | Zinc Total | = | 0.11 | mg/L | 2009-2010 |
| 46 | Lmm-3 | 1/20/10 | pH | = | 5.8 | SU | 2009-2010 |
| 47 | Lmm-3 | 1/20/10 | Copper Total | = | 0.081 | mg/L | 2009-2010 |
| 48 | LMM-2 | 5/16/11 | Aluminum Total | = | 4.6 | mg/L | 2010-2011 |
| 49 | LMM-2 | 5/16/11 | Copper Total | = | 2.3 | mg/L | 2010-2011 |
| 50 | LMM-2 | 5/16/11 | Iron Total | = | 12 | mg/L | 2010-2011 |
| 51 | LMM-2 | 5/16/11 | Lead Total | = | 0.64 | mg/L | 2010-2011 |
| 52 | LMM-2 | 5/16/11 | Zinc Total | = | 1.5 | mg/L | 2010-2011 |
| 53 | LMM-3 | 5/16/11 | Aluminum Total | = | 0.86 | mg/L | 2010-2011 |
| 54 | LMM-3 | 5/16/11 | Copper Total | = | 0.17 | mg/L | 2010-2011 |
| 55 | LMM-3 | 5/16/11 | Zinc Total | = | 0.63 | mg/L | 2010-2011 |
| 56 | LMM-2 | 5/16/11 | Chemical Oxygen Demand (COD) | = | 590 | mg/L | 2010-2011 |
| 57 | LMM-3 | 5/16/11 | Chemical Oxygen Demand (COD) | = | 130 | mg/L | 2010-2011 |
| 58 | LMM-2 | 5/16/11 | Electrical Conductivity @ 25 Deg. C | = | 420 | umhos/cm | 2010-2011 |
| 59 | LMM-2 | 5/16/11 | pH | = | 5.9 | SU | 2010-2011 |
| 60 | LMM-3 | 5/16/11 | pH | = | 5 | SU | 2010-2011 |

| Criteria - EPA Benchmarks | | | |
|---|---|---|---|
| Parameter | Units | Benchmark Value | Source |
| Chemical Oxygen Demand (COD) | mg/L | 120 | MSGP(b) |
| Total Suspended Solids (TSS) | mg/L | 100 | MSGP(a) |
| Oil and Grease | mg/L | 15 | MSGP(b) |
| Nitrate + Nitrite Nitrogen | mg/L | 0.68 | MSGP(b) |
| pH | SU - low | 6 | MSGP(b) |
| pH | SU - high | 9 | MSGP(b) |
| Aluminum Total | mg/L | 0.75 | MSGP(a) |
| Ammonia Total (as N) | mg/L | 19 | MSGP(b) |
| Arsenic Total | mg/L | 0.16854 | MSGP(b) |
| Benzene | mg/L | 0.01 | MSGP(b) |

| Copper Total | mg/L | 0.0636 | MSGP(b)* |
|---|---|---|---|
| Iron Total | mg/L | 1 | MSGP(b) |
| Lead Total | mg/L | 0.0816 | MSGP(b)* |
| Toluene | mg/L | 10 | MSGP(b) |
| Mercury Total | mg/L | 0.0024 | MSGP(b) |
| Nickel Total | mg/L | 1.417 | MSGP(b)* |
| Phenols, Total | mg/L | 1 | MSGP(b) |
| Pyrene | mg/L | 0.01 | MSGP(b) |
| Selenium Total | mg/L | 0.2385 | MSGP(b) |
| Silver Total | mg/L | 0.0318 | MSGP(b)* |
| Cadmium Total | mg/L | 0.0159 | MSGP(b)* |
| Trichloroethylene | mg/L | 0.0027 | MSGP(b) |
| Zinc Total | mg/L | 0.117 | MSGP(b)* |
| Cyanide Total (as CN) | mg/L | 0.0636 | MSGP(b) |
| Magnesium Total | mg/L | 0.0636 | MSGP(b) |
| Electrical Conductivity @ 25 Deg. C | umhos/cm | 200 | |

MSGP (a) = 2008 sector-specific numeric limits
MSGP (b) = 2000 benchmarks
*Hardness dependent in freshwater

| Criteria - Basin Plan | | | |
|---|---|---|---|
| Parameter | Units | Benchmark Value | Source |
| Arsenic Total | mg/L | 0.069 | BP |
| Cadium, Total | mg/L | 0.042 | BP |
| Chromium VI | mg/L | 1.1 | BP |
| Copper Total | mg/L | 0.0108 | BP - SSOs |
| Cyanide Total (as CN) | mg/L | 0.0094 | BP - SSOs |
| Lead Total | mg/L | 0.22 | BP |
| Mercury Total | mg/L | 0.0021 | BP |
| Selenium Total | mg/L | 0.29 | BP |
| Silver Total | mg/L | 0.0019 | BP |
| Zinc Total | mg/L | 0.09 | BP |
| PAHs | mg/L | 0.015 | BP |
| Nickel Total | mg/L | 0.0624 | BP - SSOs |

BP = Basin Plan
SSO = Site Specific
Objectives

## Attachment 4: Alleged Dates of Lakeside Violations 2007 to Present

Days with precipitation one-tenth of an inch or greater, as reported by NOAA's National Climatic Data Center; Oakland Metropolitan station data arranged by the wet seasons from October 2007-present.

| 2007-2008 | 2008-2009 | 2009-2010 | 2010-2011 | 2011-2012 |
|---|---|---|---|---|
| 9/23/2007 | 11/01/2008 | 09/14/2009 | 10/24/2010 | 10/04/2011 |
| 10/10/2007 | 11/02/2008 | 10/14/2009 | 10/25/2010 | 10/05/2011 |
| 10/11/2007 | 11/04/2008 | 10/20/2009 | 10/30/2010 | 10/06/2011 |
| 10/13/2007 | 11/27/2008 | 12/08/2009 | 11/08/2010 | 10/07/2011 |
| 10/18/2007 | 12/15/2008 | 12/13/2009 | 11/10/2010 | 10/11/2011 |
| 11/11/2007 | 12/16/2008 | 12/27/2009 | 11/11/2010 | 11/04/2011 |
| 11/12/2007 | 12/17/2008 | 01/19/2010 | 11/20/2010 | 11/05/2011 |
| 12/05/2007 | 12/20/2008 | 01/20/2010 | 11/21/2010 | 11/06/2011 |
| 12/07/2007 | 12/22/2008 | 01/21/2010 | 11/23/2010 | 11/12/2011 |
| 12/08/2007 | 12/25/2008 | 01/22/2010 | 11/24/2010 | 11/20/2011 |
| 12/17/2007 | 01/03/2009 | 01/23/2010 | 11/28/2010 | 11/21/2011 |
| 12/18/2007 | 01/22/2009 | 01/24/2010 | 12/06/2010 | 01/20/2012 |
| 12/19/2007 | 01/23/2009 | 01/26/2010 | 12/09/2010 | 01/21/2012 |
| 12/20/2007 | 01/24/2009 | 01/27/2010 | 12/15/2010 | 01/23/2012 |
| 12/28/2007 | 02/06/2009 | 01/30/2010 | 12/18/2010 | 01/24/2012 |
| 12/29/2007 | 02/07/2009 | 02/05/2010 | 12/19/2010 | 02/07/2012 |
| 01/04/2008 | 02/09/2009 | 02/09/2010 | 12/20/2010 | 03/01/2012 |
| 01/05/2008 | 02/11/2009 | 02/22/2010 | 12/22/2010 | 03/14/2012 |
| 01/06/2008 | 02/12/2009 | 02/24/2010 | 12/26/2010 | 03/15/2012 |
| 01/08/2008 | 02/13/2009 | 02/27/2010 | 12/29/2010 | 03/17/2012 |
| 01/09/2008 | 02/14/2009 | 03/03/2010 | 01/03/2011 | 03/25/2012 |
| 01/22/2008 | 02/16/2009 | 03/04/2010 | 01/30/2011 | 03/26/2012 |
| 01/23/2008 | 02/17/2009 | 03/10/2010 | 01/31/2011 | 03/28/2012 |
| 01/25/2008 | 02/18/2009 | 03/11/2010 | 02/15/2011 | 04/01/2012 |
| 01/26/2008 | 02/22/2009 | 03/13/2010 | 02/16/2011 |  |
| 01/27/2008 | 02/23/2009 | 03/31/2010 | 02/17/2011 |  |
| 01/28/2008 | 02/24/2009 | 04/01/2010 | 02/18/2011 |  |
| 01/30/2008 | 02/25/2009 | 04/03/2010 | 02/19/2011 |  |
| 02/01/2008 | 03/02/2009 | 04/05/2010 | 02/20/2011 |  |
| 02/03/2008 | 03/03/2009 | 04/06/2010 | 02/25/2011 |  |
| 02/20/2008 | 03/04/2009 | 04/12/2010 | 02/26/2011 |  |
| 02/21/2008 | 03/05/2009 | 04/13/2010 | 03/07/2011 |  |
| 02/22/2008 | 03/06/2009 | 04/20/2010 | 03/15/2011 |  |
| 02/24/2008 | 03/22/2009 | 04/21/2010 | 03/16/2011 |  |
| 02/25/2008 | 03/23/2009 | 05/11/2010 | 03/19/2011 |  |
| 03/29/2008 | 04/08/2009 | 05/18/2010 | 03/20/2011 |  |
| 04/23/2008 | 05/02/2009 | 05/26/2010 | 03/21/2011 |  |
|  | 05/05/2009 | 05/28/2010 | 03/23/2011 |  |
|  |  |  | 03/24/2011 |  |
|  |  |  | 03/25/2011 |  |
|  |  |  | 03/26/2011 |  |
|  |  |  | 03/27/2011 |  |
|  |  |  | 04/14/2011 |  |
|  |  |  | 05/15/2011 |  |
|  |  |  | 05/17/2011 |  |
|  |  |  | 05/18/2011 |  |
|  |  |  | 05/29/2011 |  |
|  |  |  | 06/01/2011 |  |
|  |  |  | 06/02/2011 |  |
|  |  |  | 06/04/2011 |  |
|  |  |  | 06/05/2011 |  |
|  |  |  | 06/29/2011 |  |

## Attachment 5: Water Quality Standards

| Parameter | Units | Water quality standard | Source |
|---|---|---|---|
| Arsenic Total | mg/L | 0.069 | Basin Plan |
| Cadium, Total | mg/L | 0.042 | Basin Plan |
| Chromium VI | mg/L | 1.1 | Basin Plan |
| Copper Total | mg/L | 0.0108 | Basin Plan, Site Specific Objectives |
| Cyanide Total (as CN) | mg/L | 0.0094 | Basin Plan, Site Specific Objectives |
| Lead Total | mg/L | 0.22 | Basin Plan |
| Mercury Total | mg/L | 0.0021 | Basin Plan |
| Selenium Total | mg/L | 0.29 | California Toxics Rule |
| Silver Total | mg/L | 0.0019 | Basin Plan |
| Zinc Total | mg/L | 0.09 | Basin Plan |
| PAHs | mg/L | 0.015 | Basin Plan |
| Nickel Total | mg/L | 0.0624 | Basin Plan, Site Specific Objectives |